# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PAUL NATHAN BROOKS, II,** ] | |
| ] | |
|   Movant, ] | |
| ] | |
| v. ] | **Case No.: 4:22-cv-8035-ACA** |
| ] | |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
|   Respondent. ] | |

## MEMORANDUM OPINION

Movant Paul Nathan Brooks pleaded guilty to conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), distribution of five grams or more of methamphetamine, in violation of § 841(a)(1), and two counts of distribution of fifty grams or more of methamphetamine, in violation of § 841(a)(1). *United States v. Brooks*, case no. 4:19-cr-594, doc. 31 at 1 (N.D. Ala. Mar. 19, 2021).[1] The court sentenced Mr. Brooks to 121 months' imprisonment on each count, to be served concurrently. *Id.* at 2. Mr. Brooks now moves to vacate his sentence, under 28 U.S.C. § 2255, on two grounds: (1) ineffective assistance of counsel for failing to move for a two-level reduction of his guidelines range under United States Sentencing

---

[1] The court will cite documents from Mr. Brooks's criminal proceeding as "*Brooks* doc. __."

Guidelines ("U.S.S.G.") § 2D1.1(b)(18); and (2) ineffective assistance of counsel for failing to object to application of a sentencing enhancement for possession of a dangerous weapon, under § 2D1.1(b)(1). (Doc. 1 at 4, 6). The court **WILL DENY** Mr. Brooks's § 2255 motion but **WILL GRANT** him a certificate of appealability on the following question: Whether trial counsel provided ineffective assistance by failing to move for a two-level reduction, under U.S.S.G. § 2D1.1(b)(18), at Mr. Brooks's sentencing.

I. BACKGROUND

A grand jury indicted Mr. Brooks on charges of conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), distribution of five grams or more of methamphetamine, in violation of § 841(a)(1), (b)(1)(B), and three counts of distribution of fifty grams or more of methamphetamine, in violation of § 841(a)(1), (b)(1)(A). (*Brooks* doc. 1). Mr. Brooks pleaded guilty to the first four counts in exchange for the government's agreement to dismiss the third count of distribution of fifty grams or more of methamphetamine and recommend a sentence at the low of the Sentencing Guidelines. (*Brooks* doc. 24 at 1, 7–8). The plea agreement contained no provisions about specific guidelines provisions and stated: "**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE**

**TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE**." (*Id.* at 15) (emphasis in original).

At the change of plea hearing, the court confirmed that Mr. Brooks understood that the Sentencing Guidelines are advisory, that the court could not determine the advisory range until the sentencing hearing, and that the court might not give the same sentence as trial counsel might have suggested. (*Brooks* doc. 44 at 13–14). The court also verified that the plea agreement was the entire agreement. (*Id.* at 16–17). Mr. Brooks specifically agreed that "the agreement set forth everything [he] wanted by way of an agreement with the government." (*Id.* at 18).

A probation officer prepared a presentence investigation report using the 2018 Guidelines Manual.[2] (*Brooks* doc. 30 at 8 ¶ 20). The presentence investigation report detailed several controlled buys of methamphetamine from Mr. Brooks at his residence between December 2018 and February 2019. (*Id.* at 6–7 ¶¶ 11–14). On February 20, 2019, nine days after the last controlled buy, officers searched Mr. Brooks's residence. (*Id.* at 7 ¶ 15). They found hydrocodone and methamphetamine in the living room, drug paraphernalia ("pipes, syringes, and scales") throughout the residence, and two guns in the bedroom. (*Id.*). One was a

---

[2] Except where specifically noted, all references to the Sentencing Guidelines are to the 2018 Guidelines Manual.

handgun with a serial number and the other was a shotgun with no serial number. (*Brooks* doc. 30 at 7 ¶ 15).

The presentence investigation report noted that for Mr. Brooks's conspiracy charge and the two counts of distributing fifty grams or more of methamphetamine, he faced a statutory minimum sentence of ten years; for the charge of distributing five grams or more of methamphetamine, he faced a statutory minimum sentence of five years. (*Id.* at 25 ¶ 74). However, the probation officer concluded that Mr. Brooks satisfied the requirements of the safety valve, 18 U.S.C. § 3553(f), permitting the court to sentence him without reference to the statutory minimums. (*Id.*).

Turning to the guidelines range, the probation officer recommended finding a base offense level of 32, under U.S.S.G. § 2D1.1. (*Id.* at 9 ¶ 22). The officer also recommended applying a two-level enhancement, under § 2D1.1(b)(1), for possession of a dangerous weapon. (*Brooks* doc. 30 at 7 ¶ 15, 9 ¶ 23). The probation officer expressly noted that Mr. Brooks did not qualify for a reduction under § 2D1.1(b)(18) because that guideline required that a defendant have no more than one criminal history point. (*Id.* at 9 ¶ 24, 25 ¶ 75). With a three-level reduction for acceptance of responsibility, the officer recommended a total offense level of 31. (*Id.* at 10 ¶¶ 30–32). Because Mr. Brooks had two criminal history points, resulting in a criminal history score of II (*id.* at 18 ¶ 42), the advisory guidelines range was

121 to 151 months' imprisonment (*Brooks* doc. 30 at 25 ¶ 75). Mr. Brooks did not object to the presentence investigation report. (*Brooks* doc. 45 at 3).

At the sentencing hearing, the court adopted the presentence investigation report and found that Mr. Brooks's offense level was 31, his criminal history category was II, and his advisory guidelines range was 121 to 151 months' imprisonment. (*Id.* at 3–4). The court sentenced him to 121 months' imprisonment on each count, to run concurrently. (*Id.* at 14). In imposing the sentence, the court acknowledged its "authority to depart from the sentence that is recommended by the guidelines," but declined to do so because "the facts that are found here are the ones that were contemplated by the [Sentencing Commission]." (*Id.* at 13). The court went on: "I have been very impressed by the—I mean, the number of people who have spoken on your behalf and the effect that your initial arrest had on you and your desire to go, as you said, back to that straight and narrow." (*Brooks* doc. 45 at 13–14). The court concluded that, "[c]andidly, given the amount of drugs, I would not have normally sentenced this to the low end range, but I do believe that you have exhibited a strong desire to return to the path that you were once on, and that characteristic stood out to me." (*Id.* at 14).

## II. DISCUSSION

Mr. Brooks brings two claims for habeas relief, both based on ineffective assistance of counsel. (Doc. 1 at 4, 6). To prevail on a claim of ineffective assistance

5

of trial counsel, a movant must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient only if it "fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation marks omitted). A movant can establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1148 (11th Cir. 2017) (quotation marks omitted).

1. Claim One

In his first claim, Mr. Brooks asserts that trial counsel provided ineffective assistance by failing to request a two-level reduction to his offense level under U.S.S.G. § 2D1.1(b)(18). (Doc. 1 at 4).

Section 2D1.1(b)(18) provides for a two-level decrease "[i]f the defendant meets the criteria set forth in subdivisions (1)–(5) of subsection (a) of § 5C1.2." U.S.S.G. § 2D1.1(b)(18). Section 5C1.2, in turn provides that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria

in 18 U.S.C. § 3553(f)(1)–(5) set forth below." *Id.* § 5C1.2(a). The complication is that the recitation of factors contained in § 5C1.2(a)(1)–(5) does not match the recitation of factors found in § 3553(f)(1)–(5). Section 3553(f)(1) permits safety valve relief if the defendant has up to four criminal history points, 18 U.S.C. § 3553(f)(1)(A), while § 5C1.2 prohibits safety valve relief if the defendant has more than one criminal history point, U.S.S.G. § 5C1.2(a)(1).

Section 5C1.2 used to mirror § 3553(f) exactly. *Compare* 18 U.S.C. § 3553(f) (2010), *with* U.S.S.G. § 5C1.2; *see also United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) (explaining that § 3553(f), "as well as U.S.S.G. § 5C1.2 which employs the same list of factors, is commonly called the 'safety valve'"). But in 2018, Congress amended § 3553(f). In relevant part, Congress increased the maximum number of criminal history points a defendant can have while remaining eligible for relief from one to four. *Compare* 18 U.S.C. § 3553(f)(1) (2010) (prohibiting safety valve relief if the defendant had "more than 1 criminal history point"), *with id.* § 3553(f)(1)(A) (2018) (prohibiting safety valve relief if the defendant has "more than 4 criminal history points"). The Sentencing Commission, however, has not amended § 5C1.2. Under both the 2018 Guidelines used at Mr. Brooks's sentencing and the now-applicable 2021 Guidelines, § 5C1.2 continues to require that "the defendant does not have more than 1 criminal history point." U.S.S.G. § 5C1.2(a)(1) (2018); *id.* § 5C1.2(a)(1) (2021). As a result, a

defendant who qualifies under § 3553(f) for safety valve relief may not qualify under § 5C1.2. This was the situation with Mr. Brooks, who had two criminal history points. (*Brooks* doc. 30 at 18 ¶ 42).

Mr. Brooks now argues that trial counsel was ineffective for failing to move for a two-level reduction under § 2D1.1(b)(18) on the ground that he was eligible for safety valve relief under § 3553(f). (Doc. 1 at 4; doc. 5 at 1–2). He can establish neither deficient performance on his attorney's part nor prejudice.

To show deficient performance, Mr. Brooks must establish that his attorney's failure to move for a reduction "fell below an objective standard of reasonableness" or "outside the wide range of professionally competent assistance." *Johnson*, 643 F.3d at 928. An attorney does not perform deficiently by failing to raise an unsettled legal issue. *See Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004). And although § 3553(f)(1)(A) and § 5C1.2(a)(1) appear to be inconsistent, the Eleventh Circuit has not addressed that inconsistency in a published decision. Indeed, in an unpublished case, the Eleventh Circuit held that a district court did not plainly err by finding that a defendant who had three criminal history points failed to qualify for safety valve relief under the Guidelines because (1) the defendant was not subject to a mandatory minimum, so § 3553(f) was not applicable; and (2) the plain language of § 5C1.2 continues to prohibit relief for defendants with more than one criminal history point. *United States v. Leri*, 849 F. App'x 898, 900 (11th Cir. 2021).

Although *Leri* is unpublished and, therefore, non-binding, it supports the finding that an attorney's failure to raise this unsettled question is not an "error[ ] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Even if counsel did perform deficiently by failing to argue for a two-level reduction under § 2D1.1(b)(18), Mr. Brooks cannot establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Reaves*, 872 F.3d at 1148. "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016); *cf. Griffith v. United States*, 871 F.3d 1321, 1339 (11th Cir. 2017) (noting that *Molina-Martinez* dealt with plain-error review, not *Strickland* prejudice, but declining to hold whether the standard is different because the outcome was the same regardless). But Mr. Brook has not established that the court applied an incorrect guidelines range.

As in the non-binding but persuasive decision in *Leri*, Mr. Brooks was not sentenced based on the statutory minimum. *See* 849 F. App'x at 900. Although a statutory minimum originally applied to Mr. Brooks's charges, those minimums fell out of the case because he qualified for statutory safety valve relief under § 3553(f). (*See Brooks* doc. 30 at 25 ¶ 74). The court did not consider or apply any statutory

9

minimum in sentencing him; the court considered only the guidelines range, the § 3553(a) factors, Mr. Brooks's colloquy, and the statements of friends and family on his behalf. (*See Brooks* doc. 45 at 13–14). And the plain language of § 2D1.1(b)(18), by incorporating § 5C1.2(a)(1), prohibits a two-level guidelines safety valve reduction for a defendant with more than one criminal history point. Accordingly, even if counsel had moved for the reduction, the court would have denied that motion and Mr. Brooks's advisory guidelines range would have remained the same. The court **WILL DENY** Mr. Brooks's § 2255 motion with respect to this claim.

2. Claim Two

In his second claim, Mr. Brooks contends that trial counsel provided ineffective assistance by failing to object to the application of a two-level enhancement, under § 2D1.1(b)(1), for possession of a dangerous weapon. (Doc. 1 at 6). In support of this claim, Mr. Brooks states that the facts did not support the enhancement and that the government led him to believe it would not seek the enhancement. (*Id.*; doc. 5 at 2–3).

As an initial matter, the record refutes Mr. Brooks's allegation that the government led him to believe that it would not seek the § 2D1.1(b)(1) enhancement. Nothing in the plea agreement indicates any such promise, and the plea agreement expressly disavows any promises not contained in it. (*Brooks* doc. 24 at 15). In

addition, at Mr. Brooks's change of plea hearing, he testified that the plea agreement contained all promises made to him. (*Brooks* doc. 44 at 16–18). "There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Mr. Brooks's conclusory statement that the government "led [him] to believe" (doc. 1 at 6), that it would not seek the enhancement is insufficient to overcome that presumption.

Turning to Mr. Brooks's argument about whether the facts support the enhancement, § 2D1.1(b)(1) requires a two-level increase to the base offense level when "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1 provides that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1, cmt. n.11(A). To justify this enhancement, "the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

Mr. Brooks can show neither deficient performance nor prejudice for counsel's failure to object to this enhancement. Mr. Brooks admitted the facts in the presentence investigation report. *See United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006) (holding that a defendant admits the facts in the presentence

11

investigation report if he does not object to them). He does not now allege that the facts set out in the presentence investigation report are inaccurate. (*See* doc. 1 at 6; doc. 5 at 2–3). Instead, he contends that under *Stallings*, the government failed to carry its burden of proving that he possessed the guns in connection with his offenses. (Doc. 5 at 2–3). *Stallings*, however, is clearly distinguishable.

In *Stallings*, police found three pistols in a defendant's home when they arrested him for involvement in a drug conspiracy. 463 F.3d at 1220. The defendant lived in the home with "at least three other adults," there was no evidence "that possession of the pistols was somehow unlawful," the police did not find any drug paraphernalia in the house, and "no one suggested that any activities related to the conspiracy ever took place" there. *Id.* at 1220–21. The Eleventh Circuit held that the government had not satisfied its burden of showing that application of the enhancement was proper. *Id.* at 1221. In this case, by contrast, the undisputed facts are that Mr. Brooks repeatedly sold drugs from his residence; there is no evidence Mr. Brooks shared his home with anyone else; police officers found drug paraphernalia in the house; and one of the guns was missing a serial number. (*Brooks* doc. 30 at 6–7 ¶¶ 11–15). This is sufficient to establish by a preponderance of the evidence that either "the firearm was present at the site of the charged conduct or . . . the defendant possessed a firearm during conduct associated with the offense of conviction." *Stallings*, 463 F.3d at 1220.

Because Mr. Brooks's underlying challenge to the enhancement is meritless, he cannot establish that counsel performed deficiently by failing to make a meritless objection, or that any deficiency prejudiced the outcome. *See, e.g.*, *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance."). Accordingly, the court **WILL DENY** this claim.

### III.  CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Cases, Rule 11(a). The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). The court finds that Mr. Brooks has done so with respect to the following question: Whether trial counsel provided ineffective assistance by failing to move for a two-level reduction, under U.S.S.G. § 2D1.1(b)(18), at Mr. Brooks's sentencing. The court therefore **WILL GRANT** him a certificate of appealability on that question.

## IV.   CONCLUSION

The court **WILL DENY** Mr. Brooks's § 2255 motion. The court **WILL GRANT** Mr. Brooks a certificate of appealability on the following question: Whether trial counsel provided ineffective assistance by failing to move for a two-level reduction, under U.S.S.G. § 2D1.1(b)(18), at Mr. Brooks's sentencing.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this October 4, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE